1  Robert A. Bailey (# 214688)
      rbailey@afrct.com
2  E. Christine Hehir (# 201969)
      chehir@afrct.com
3  ANGLIN, FLEWELLING, RASMUSSEN,
      CAMPBELL & TRYTTEN LLP
4  199 South Los Robles Avenue, Suite 600
   Pasadena, California 91101-2459
5  Telephone:  (626) 535-1900
   Facsimile:   (626) 577-7764
6
7  Attorneys for Defendant WELLS FARGO
   BANK, N.A., successor by merger with Wells
8  Fargo Bank Southwest, N.A. f/k/a Wachovia
   Mortgage, FSB f/k/a World Savings Bank, FSB
   ("Wells Fargo")
9

10

11                        UNITED STATES DISTRICT COURT

12                       NORTHERN DISTRICT OF CALIFORNIA

13

14  JUAN MANUEL VARGAS AND HILDA         CASE NO.:  3:12-CV-02008-JST
    VARGAS,
15                                       [Honorable Jon S. Tigar, Judge]
                  Plaintiff,
16
         v.
17                                       DEFENDANT WELLS FARGO NOTICE
    WELLS FARGO BANK, N.A. AKA           OF MOTION AND MOTION FOR
18  WACHOVIA MORTGAGE, A DIVISION OF     SUMMARY JUDGMENT;
    WELLS FARGO BANK, N.A. AND F/K/A     MEMORANDUM OF POINTS AND
19  WACHOVIA, MORTGAGE, FSB              AUTHORITIES
    FORMERLY KNOWN AS WORLD
20  SAVINGS BANK, FSR, AS BENEFICIARY;
    CAL-WESTERN RECONVEYANCE
21  CORPORATION, a CALIFORNIA
    CORPORATION and all persons claiming by,   HEARING:
22  through, or under such entities or persons; and   Date:       August 15, 2013
    all persons unknown, claiming any legal or   Time:       2:00 p.m.
23  equitable right, title, estate lien, or interest in   Ctrm:       9, 19th Floor
    the real property described in the complaint
24  adverse to Plaintiffs title, or constituting any
    cloud on Plaintiffs title thereto, and DOES I
25  through 100, inclusive,

26                  Defendants.

27

28

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

**PLEASE TAKE NOTICE** that on **August 15, 2012**, at **2:00 p.m.** in **Courtroom 9** on the **19th floor** of the above-entitled Court located at 450 Golden Gate Avenue, San Francisco, California, the Honorable Jon S. Tigar, Judge, presiding, Defendant WELLS FARGO BANK, N.A., successor by merger with Wells Fargo Bank Southwest, N.A. f/k/a Wachovia Mortgage, FSB f/k/a World Savings Bank, FSB ("Wells Fargo") will  move the Court for summary judgment or in the alternative, partial summary judgment, as to Plaintiffs' claims in the third amended complaint ("TAC").

Grounds for the motion are that there is no genuine dispute as to any material fact and Wells Fargo is entitled to judgment as a matter of law.  Moreover, a number of claims are barred by the applicable statute of limitations and federally preempted.

This motion is based on this Notice, the following Memorandum of Points and Authorities, the accompanying Declarations of Michael Dolan and E. Christine Hehir, the Appendix of Exhibits in Support of Motion for Summary Judgment, the accompanying Request for Judicial Notice, the records and pleadings on file herein, and on such other evidence as may be presented.

Respectfully submitted,

Dated:  July 11, 2013

ANGLIN, FLEWELLING, RASMUSSEN,
    CAMPBELL & TRYTTEN LLP


By:    /s/ E. Christine Hehir
    E. Christine Hehir
    chehir@afrct.com
Attorneys for Defendant WELLS FARGO BANK,
N.A., successor by merger with Wells Fargo Bank
Southwest, N.A. f/k/a Wachovia Mortgage, FSB
f/k/a World Savings Bank, FSB ("Wells Fargo")

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................1

1.   INTRODUCTION ...........................................................................................................1

2.   SUMMARY OF UNDISPUTED FACTS ......................................................................2

    A.   Plaintiffs Loan...................................................................................................2

    B.   The Loan Modification ......................................................................................2

    C.   The July 2011 Default and Foreclosure ...........................................................6

    D.   Following The Trustee's Sale, Wells Fargo Secured Possession Of The
          Property And Eventually Sold It To A Third Party ...........................................6

    E.   Procedural History .............................................................................................6

    F.   Plaintiffs' Claims ..............................................................................................7

3.   WELLS FARGO IS ENTITLED TO SUMMARY JUDGMENT ON THE
    UNFAIR BUSINESS PRACTICES CLAIM (1ST) ......................................................7

    A.   Plaintiffs Cannot Prove That Wells Fargo Engaged In Unlawful Business
          Practices .............................................................................................................8

    B.   Plaintiffs Cannot Prove That Wells Fargo Engaged In Unfair Business
          Practices ...........................................................................................................10

    C.   Plaintiffs Cannot Prove That Wells Fargo Engaged In Any Fraudulent
          Business Practices ...........................................................................................10

    D.   The UCL Claim Cannot Survive Without Tender .................................................11

4.   WELLS FARGO IS ENTITLED TO SUMMARY JUDGMENT ON THE
    COMMON LAW FRAUD (SUPPRESSION OF FACTS) CLAIM (2ND)......................11

    A.   Wells Fargo Did Not Stand In A Relationship With Plaintiffs Which
          Would Give Rise To A Duty To Disclose The Information Allegedly
          Concealed.........................................................................................................12

    B.   Wells Fargo Did Not Suppress Any Facts Concerning Plaintiffs'
          Modification.....................................................................................................13

    C.   Plaintiffs Would Not Have Acted Differently Regardless Of The Terms Of
          The Modification ............................................................................................14

5.   WELLS FARGO IS ENTITLED TO SUMMARY JUDGMENT ON THE
    REQUESTS FOR INJUNCTIVE AND DECLARATORY RELIEF ...............................15

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

6.    WELLS FARGO IS ENTITLED TO SUMMARY JUDGMENT ON THE NEGLIGENCE CLAIM (5TH) .................................................................15

    A.    The Negligence Claim Is Time-Barred.................................................15

    B.    Wells Fargo Did Not Owe Plaintiffs A Duty Of Care. ........................16

7.    PLAINTIFFS' CANNOT PREVAIL ON THEIR CLAIM TO SET ASIDE THE TRUSTEE SALE (6TH) .................................................................................17

    A.    Plaintiffs Cannot Establish A Claim Entitling Them To Set Aside The Trustee Sale.  They Also Fail To Name A Necessary And Indispensable Party ...................................................................................................17

    B.    Plaintiffs' Claim to Set Aside the Trustee Sale Cannot Survive Absent Tender Of The Debt ...........................................................................18

8.    PLAINTIFFS' CLAIMS ARE PREEMPTED BY THE HOME OWNERS' LOAN ACT .................................................................19

    A.    As A Federally-Chartered Savings Bank, Wachovia Mortgage, FSB Operated Under HOLA...............................................................................19

    B.    Regulations Promulgated By The OTS Preempt Any State Law That Affects The Operation Of A Federal Savings Association ...................................19

    C.    State Laws Preempted By HOLA ...........................................................20

    D.    HOLA Preempts Plaintiffs' State Law Claims .....................................21

9.    THE COURT SHOULD GRANT PARTIAL SUMMARY JUDGMENT BY DENYING PUNITIVE DAMAGE RECOVERY .........................................22

10.    CONCLUSION.................................................................................23

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1

# **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**FEDERAL CASES**

4

*20th Century Ins. Co. v. Liberty Mut. Ins. Co.*,
   965 F.2d 747 (9th Cir. 1992) ................................................13

5

*Ahmad v. World Savings Bank*,
6
   2009 U.S. Dist. LEXIS 45210 (E.D. Cal. May 29, 2009).....................21

7
*Akhavein v. Argent Mortg. Co.*
8
   2009 U.S. Dist. LEXIS 61796 (N.D. Cal. July 17, 2009).....................8, 9

*Alicia v. GE Money Bank*,
9
   2009 U.S. Dist. LEXIS 60813 (N.D. Cal. July 16, 2009).....................18

10
*American Banker Ass'n. v. Lockyear*,
11
   239 F. Supp. 2d 1000 (E.D. Cal. 2002).....................19

12
*Andrade v. Wachovia Mortgage*,
   2009 U.S. Dist. LEXIS 34872 (S.D. Cal. Apr. 21, 2009).....................21
13

14
*Armstrong v. Chevy Chase Bank, FSB*,
   2012 U.S. Dist. LEXIS 144125 (N.D. Cal. Oct. 3, 2012).....................17

15
*Bank of America v. The City & County of San Francisco*,
16
   309 F.3d 551 (9th Cir. 2002) ................................................19

17
*Birdsong v. Apple, Inc.*,
   590 F.3d 955 (9th Cir. 2009) ................................................7
18

19
*Bojorquez v. Gutierrez*,
   *2010 U.S. Dist. LEXIS 75205 at *19 (N.D. Cal. July 26, 2010)*............16

20
*Collins v. Power Default Services, Inc.*,
21
   2010 U.S. Dist. LEXIS 3361 (N.D. Cal. Jan. 24, 2010) (Conti, J.)........18

22
*Coppes v. Wachovia Mortg. Corp.*,
   2010 U.S. Dist. LEXIS 115865 (E.D. Cal. Oct. 29, 2010) .....................21
23

24
*Cosio v. Simental*,
   2009 U.S. Dist. LEXIS 8385 (C.D. Cal. Jan. 27, 2009) .....................21

25
*DeLeon v. Wells Fargo Bank, N.A.*,
26
   729 F. Supp. 2d 1119 (N.D. Cal. 2010) ................................................20

27
*Farner v. Countrywide Home Loans*
   2009 U.S. Dist. LEXIS 5303 (S.D. Cal. Jan. 26, 2009).....................9

28

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

*Glenn K. Jackson Inc. v. Roe*,
    273 F.3d 1192 (9th Cir. 2001) ..................................................................................10

*Gonzales v. Wells Fargo Bank, N.A.*,
    2012 U.S. Dist. LEXIS 154851 (N.D. Cal. Oct. 29, 2012)......................................17

*Guerrero v. Wells Fargo Bank, N.A.*,
    2010 U.S. Dist. LEXIS 96261 (C.D. Cal. Sept. 14, 2010)......................................20

*Hoffman v. Bank of America, N.A.*
    2010 U.S. Dist. LEXIS 70455 (N.D. Cal., June 30, 2010) .......................................9

*Kariguddaiah v. Wells Fargo Bank, N.A.*,
    2010 U.S. Dist. LEXIS 65561 (N.D. Cal. July 1, 2010).............................................8

*Lomayaktewa v. Hathaway*,
    520 F.2d 1324 (9th Cir. 1975) ..................................................................................18

*Manosca v. Wachovia Mortg.*,
    2011 U.S. Dist. LEXIS 78609 (N.D. Cal. July 20, 2011)........................................12

*McDonald v. Coldwell Banker*,
    543 F.3d 498 (9th Cir. 2008) ....................................................................................10

*Nava v. Virtual Bank*,
    2008 U.S. Dist. LEXIS 72819 (E.D. Cal. July 16, 2008) ........................................21

*Powell v. Residential Mortg. Capital*,
    2010 U.S. Dist. LEXIS 59698 (N.D. Cal. May 24, 2010) ..........................................8

*Sato v. Wachovia Mortg., FSB*,
    2011 U.S. Dist. LEXIS 75418 (N.D. Cal. July 13, 2011).........................................22

*Silvas v. E*Trade Mortg. Corp.*,
    514 F.3d 1001 (9th Cir. 2008) ............................................................................19, 20

*Virginia Surety Co. v. Northrop Grumman Corp.*,
    144 F.3d 1243 (9th Cir. 1998) ..................................................................................18

*Zlotnik v. U.S. Bancorp, et al.*,
    2009 U.S. Dist. LEXIS 119857 (N.D. Cal. Dec. 22, 2009)......................................20

**STATE CASES**

*Abdallah v. United Sav. Bank*,
    43 Cal. App. 4th 1101 (1996) .............................................................................15, 18

*Berryman v. Merit Property Mgmt. Inc.*,
    152 Cal. App. 4th 1544 (2007) ..................................................................................8

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

*Cel-Tech Commc'ns, Inc., v. L.A. Cellular Tel. Co.*
  20 Cal.4th 163 (1999) ............................................................................................10

*Constantian v. Mercedes-Benz Co.*,
  5 Cal. 2d 631,634 (Cal. 1936) ...............................................................................15

*Cruz v. Homebase*,
  83 Cal. App. 4th 160 (2000) ...................................................................................22

*Eddy v. Sharp*,
  199 Cal. App. 3d 858 (1988) ..................................................................................16

*Estate of Wilson*,
  64 Cal. App. 3d 786 (1976) ....................................................................................13

*Farmers Ins. Exch. v. Super. Court*,
  2 Cal.4th 377 (1992) .................................................................................................8

*FPCI Re-Hab 01 v. E&G Investments, Ltd.*,
  207 Cal. App. 3d (1989) ..........................................................................................15

*Gregory v. Albertson's, Inc.*,
  104 Cal.App.4th 845 (2002) ...................................................................................10

*Ingels v. Westwood One Broad. Servs., Inc.*,
  129 Cal. App. 4th 1050 (2005) .................................................................................8

*Kaldenbach v. Mutual of Omaha Life Ins. Co.*,
  178 Cal. App. 4th 830 (2009) ...........................................................................11, 14

*Kasky v. Nike, Inc.*,
  27 Cal. 4th 939 (2002) ............................................................................................11

*Khoury v. Maly's of Cal., Inc.*,
  14 Cal. App. 4th 612 (1993) .....................................................................................7

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003) ............................................................................................7

*Kovich v. Paseo Del Mar Homeowners' Ass'n.*,
  41 Cal. App. 4th 863 (1996) ...................................................................................12

*Lazar v. Hertz Corp.*,
  69 Cal. App. 4th 1494 (1999) ...................................................................................8

*LiMandri v. Judkins*,
  52 Cal. App. 4th 326, 349 (1997).............................................................................16

*Lopez v. World Sav. & Loan Ass'n*,
  105 Cal. App. 4th 729 (2003) ............................................................................19, 22

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

*McElroy v. Chase Manhattan Mortgage Corp.*,
   134 Cal. App. 4th 388 (2005) ............................................................................11

*Meetz v. Mohr*,
   141 Cal. 667 (1904) ........................................................................................11

*Nymark v. Heart Fed. Sav. & Loan*,
   231 Cal. App. 3d 1089 (1991) ...................................................................12, 16

*Perlas v. GMAC Mortg., LLC*,
   187 Cal. App. 4th 429 (2010) ...................................................................12, 16

*Sipe v. McKenna*,
   88 Cal. App. 2d 1001 (1948) ..........................................................11, 15, 18

*Software Design and Application Ltd. v. Hoeffer & Arnolt Inc.*,
   49 Cal. App. 4th 472 (1996) .............................................................................16

*Touli v. Santa Cruz County Title Co.*,
   20 Cal. App. 2d 495 (1937) .............................................................................11

**FEDERAL STATUTES**

12 U.S.C. § 1461, *et seq*..........................................................................................19

12 U.S.C. § 1464(a) ...............................................................................................20

**STATE STATUTES**

Cal. Civil Code § 2923.5............................................................................................9

Cal. Civil Code § 2923.6............................................................................................22

Cal. Civil Code § 3294(a) ..........................................................................................22

**REGULATIONS**

12 C.F.R. § 545.2 ...............................................................................................19, 20

12 C.F.R. § 560.2 ......................................................................................................19

12 C.F.R. § 560.2(a) .................................................................................................20

12 C.F.R. § 560.2(b) .................................................................................................20

61 Fed. Reg. 50951, 50966-67 (Sept. 30, 1996)........................................................19

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# MEMORANDUM OF POINTS AND AUTHORITIES

## 1.    INTRODUCTION

This is an action brought by husband and wife borrowers (Juan and Hilda Vargas) against their lender arising out of a 2007 home loan (and a 2009 modification to the loan), the borrowers' subsequent default, and the resulting completed foreclosure sale.  The property was sold to a third party and the borrowers no longer live there.

Plaintiffs initially sought to rescind their loan agreements and recover monetary damages alleging their lender committed predatory and unfair lending practices by loaning Plaintiffs money they could not afford to repay, placing them in a costly adjustable rate mortgage and discriminating against them based on their race in charging them higher fees and interests than non-minorities.  They allege the same bad acts occurred in the modification of their loan, including their lender's concealment of the terms of the modification.

However, the overriding theme of this action is that the loan independent broker and independent loan modification company Plaintiffs retained to assist them negotiate their 2007 refinance loan and then the 2009 modification failed to adequately explain any of the documents prepared on their behalf (which they admit they signed) or any documents they received from the bank (which they don't recall receiving, but did sign).  They admit they never spoke with anyone at the bank about either transaction and never requested a translation of the documents from English to Spanish.  They relied on their hired brokers.

The claims concerning the origination of their loan have already been dismissed with prejudice.  The only remaining claims concern the modification of their loan: (1) whether the terms were suppressed; (2) whether a more favorable modification was concealed from them; (3) whether they qualified for the modification they were offered and accepted; and (4) whether Wells Fargo engaged in discrimination in this transaction.

Plaintiffs cannot prevail on any of their remaining claims.  First, to the extent Plaintiffs seek recovery of the property, the foreclosure sale has been completed and Plaintiffs failure to tender their outstanding debt precludes their eligibility for equitable relief.  Additionally, all claims are barred by the applicable statutes of limitation, are federally preempted and Plaintiffs

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1  fail to either plead nor can they prove facts sufficient to support any of their claims.  As such,

2  summary judgment should be granted.

3      Following the court's rulings on successive motions to dismiss, the surviving claims are:

4  (1) violation of Business & Professions Code §17200; (2) common law fraud (suppression of

5  facts); (3) preliminary and permanent injunction and declaratory relief; (4) negligence; and (5)

6  set aside trustee sale.  When tested by summary judgment, none of the remaining clams survive.

7                  **2.**    **SUMMARY OF UNDISPUTED FACTS**

8  **A.**    **Plaintiffs Loan**

9      On or about October 31, 2007, Plaintiffs borrowed $775,000 from Wells Fargo's

10  predecessor, World Savings Bank, FSB, secured by a deed of trust against real property

11  commonly described as 2031 Hull Avenue, Redwood City, California 94061-3316 (the

12  "Property").  (Appendix of Exhibits ("AOE") A & B).  In January 2008, World Savings Bank,

13  FSB, changed its name to Wachovia Mortgage, FSB.  (*See* AOE Exhs. C through D).  Wachovia

14  Mortgage, FSB then converted into and merged into Wells Fargo Bank, N.A. in November 2009.

15  (*See* AOE Exhs. E through G).

16  **B.**    **The Loan Modification**

17      In December 2008, Plaintiffs could not afford the payments on the loan from World

18  Savings secured by the Property and stopped making payments.  (AOE Exh. H at 94:22-95:2, I at

19  115).  Plaintiffs knew they could not pay the loan unless it was modified.  (AOE Exh. H at 42,

20  91-92).  In fact, they owned two other properties which fell into foreclosure.  One was sold at a

21  short sale, the other they "lost".  (AOE Exh. H at 45-47, 99-100, I at 112-113, 121). Mr. Vargas

22  retained the services of the Loan Negotiator Group to assist him regarding loan modification.

23  (AOE Exh. H at 41-43, I at 116).

24      At all times regarding the 2009 modification, Plaintiffs always dealt with this company.

25  They never spoke with anyone at the bank.  (AOE Exh. H at 44, 47:19-22, 50, I at 110, 116).

26  Mr. Vargas would meet with the employees and provide the information and documentation that

27  they requested at their offices.  (AOE Exh. H at 41-43, 53-55, 58-67).  According to Mr. Vargas,

28  all the documents Loan Negotiator employees provided to the Plaintiffs were written in English,

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1  though the Spanish speaking Vargases had little understanding of the English language, either

2  written or verbal.  As such, Mr. Vargas relied on the employees of the loan modification

3  consultants to explain the nature and general purpose of the documents to him in Spanish.  (AOE

4  Exh. H at 57-60).  Though documents were never presented to Plaintiffs in Spanish, Plaintiffs did

5  not request that anyone provide a written translation.  (*Id.* at 57-60, 79-80). When documents

6  needed to be signed, both Mr. and Mrs. Vargas would go to the office of the Loan Negotiator.

7  Because Mr. Vargas trusted these Loan Negotiator employees, he signed documents when

8  requested as the employee instructed.  (*Id.* at 57-60).  Mrs. Vargas was not involved in the

9  negotiations; she signed documents where her husband instructed her to sign.  (AOE Exh. H at

10  41, I at 107-109, 114-115, 121-122).  Mr. and Mrs. Vargas both testified that they do not

11  remember signing loan related documents, when they signed any such documents or what

12  documents they actually signed.  (AOE Exh. H, I).  However, they do acknowledge their

13  signatures.  (AOE Exh. H, I).

14  On or about May 1, 2009, Wells Fargo's Loss Mitigation Department received via a

15  facsimile a letter of authorization from the Loan Negotiator and signed by the borrowers

16  authorizing Wells Fargo to release confidential information concerning their loan to the Loan

17  Negotiator Group.  This was the third letter of authorization from a modification company

18  received by Wells Fargo.  (Dolan decl. ¶14; AOE Exh. J).  Wells Fargo had no relationship with

19  this loan modification company, or indeed, with any of the companies Plaintiffs retained to

20  negotiate a modification of their loan. (Dolan dec. ¶14).  In late May, 2009, Wells Fargo received

21  an 18 page fax from the Loan Negotiator Group purporting to be a workout package for the

22  Plaintiffs.  (Dolan Decl. ¶15; AOE Exh. K).

23  This fax consisted of a hardship letter, workout proposal, workout financial qualification

24  and included the borrowers' financial records.  (AOE Exh. K). In support of their application, the

25  borrowers indicated their hardship was caused by an injury on the job in 2009, the necessity of

26  relying on the reduced income from workers' compensation benefits for a short period of time,

27  along with reduced hours once the injured borrower returned to work.  (AOE Exh. K at 142).

28  They indicated the hardship was over and they could resume making payments in June 2009.

(*Id.*).

Wells Fargo (then Wachovia Mortgage) reviewed the application under its in-house modification program, Mortgage Assistance Program ("MAP"), the only modification plan offered at that time.[1]  (Dolan Decl. ¶17).  The MAP program was a fixed "step rate" modification.  (*Id.*). A "step rate" is comprised of fixed rates and fixed payments, unlike an adjustable rate which includes an index and varies according to that index.  (*Id.* ¶18).  As reflected by the modification agreement itself, the step rate adjusts periodically until 2015, at which time the rate adjusted to 6.2% which would continue for the life of the loan.  Plaintiffs' original loan was an adjustable rate mortgage.  (*Id.*).

A modification under MAP is based solely on meeting certain financial criteria.  (Dolan Decl. ¶19). The guidelines for MAP have the bank compare the borrowers' income sources in the manner allowed by the its regulators, the Office of Thrift Supervision guidelines against the calculated Principal, Interest, Taxes, Insurance, and Association Dues ("PITIA") loan payment the borrower is required to pay the bank on the subject loan, as well as a borrowers' monthly obligations to other lenders.  (*Id.*). Only financial criteria is considered in reviewing a loan for a modification.  Wells Fargo does not consider the ethnicity or race of a borrower in the decision to modify a loan.  In order to qualify, a borrowers' Debt-to-Income Ratio ("DTI") must be 31% or less.  (*Id.*). "DTI" or "Debt-to-Income Ratio" means the ratio of the Borrower's first-lien mortgage Monthly Payment (including monthly amounts for principal, interest, escrow, taxes, hazard insurance and homeowners' association or condominium fees if such homeowners' association or condominium fees are escrowed) to the income.  (Dolan Decl. ¶17).

Wells Fargo acted consistently, as the Loan File shows, with its guidelines for considering modifications under its proprietary MAP programs.  Under the MAP program, with the Plaintiffs' verified combined income of $7,161.26 per month, the borrowers met the criteria for a MAP modification.  As such, the Plaintiffs were offered a modification under MAP.

---

[1] Wachovia was not a signatory to the February 2009 Home Affordable Modification Program ("HAMP") until October 2009.  (Dolan Decl. ¶17).  Even if Wachovia had been part of HAMP at that time, Plaintiffs would not have qualified because their loan exceeded the $729,750 threshold.  (AOE Exh. L).

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

(Dolan Decl. ¶18; AOE Exh. M).

The terms of the modification were memorialized in a two page written Modification Agreement, numbered pages "1 of 2" and "2 of 2".  (AOE Exh. M). Page one outlines the basic terms of the agreements, reflecting that the modification forgave outstanding interest and late charges as of the effective date, and further clearly sets forth the fixed interest rates and payments for each year for the remainder of the Loan.  (*Id.* at 152). Within the first two lines of the second page of the agreement, the borrowers are informed that "Each Interest Rate will go into effect on the corresponding Interest Rate Effective Date".  (*Id.* at 153).

The two page written agreement, with a cover letter and other information consisting of a total of seven pages, was forwarded to the Plaintiffs on June 11, 2009, via UPS next day air, to their home address.[2]  (Dolan Decl. ¶21; AOE, Exh. N, O).  The Modification Agreement and cover letter instructed Plaintiffs that the signed, unaltered agreement must be received in Wells Fargo's San Antonio office by June 20, 2009 in order to become effective.  (AOE Exh. N at 154, 156). The first payment under the agreement in the amount of $2,717.47 was also required at this time.  (*Id.* at 154).  Wells Fargo did not receive any notification that this packet was not delivered.  (Dolan Decl. ¶22).

On June 18, 2009, Wells Fargo received a signed copy of the Agreement.  (Dolan Decl. ¶23; AOE Exh. P).  Plaintiffs also made the payment required by the agreement, which was processed on June 19, 2009.  (Dolan Decl. ¶24; AOE Exh Q at 169).  Plaintiffs admit the signatures on the agreement are theirs (AOE Exh. H at 74, I at 113-115), though they have no recollection of having received the document. (AOE Exh. H at 79-80).

Plaintiffs made each payment under the agreement for the first two years.  (Dolan Decl. ¶25; AOE Exh. Q at 182-190). When the loan payment increased in the third year, Plaintiffs stopped making payments.  (Dolan Decl. ¶25; AOE Q at 188-189, H at 91-92, R at 183, Exh. I at 120).  Mr. Vargas testified that after the first year when the payment increased, he knew then that

---

[2] It is the custom and practice of Wells Fargo, and its predecessors in interest, that when correspondence is sent to a borrower or received concerning a borrower's loan, those documents are scanned into the borrower's electronic loan file and page numbers reflecting the total number of pages scanned per document are imprinted on the scanned copies.  (Dolan Decl. ¶21).

1  in the end he would lose the house.  (AOE Exh. H at 67:12-68:11).

2  **C.      The July 2011 Default and Foreclosure**

3  July 15, 2011, Plaintiffs defaulted on their loan and Cal Western Reconveyance

4  Corporation ("Cal-Western"), as agent for the trustee, caused to be recorded a Notice of Default

5  and Election to Sell in December 2011.  (*See* AOE Exh. S).  Shortly thereafter, Cal-Western was

6  substituted as the trustee under the deed of trust.  (AOE Exh. R).  Cal-Western noticed a Notice

7  of Trustee's Sale for a sale to occur on April 9, 2012.  (AOE Exh. S).  The sale was ultimately

8  completed on April 9, 2012.  (AOE Exh. T).  As a consequence of the sale, the Property reverted

9  back to Wells Fargo as the beneficiary of the deed of trust securing the loan.  (*Id.*)

10 **D.      Following The Trustee's Sale, Wells Fargo Secured Possession Of The Property And**

11 **        Eventually Sold It To A Third Party**

12 Wells Fargo filed an unlawful detainer action April 19, 2012 in San Mateo Superior

13 Court.  (AOE Exh. W at 217).  The Plaintiffs contested the action and asserted affirmative

14 defenses which were based on the claims made in this action.  (*Id.* at 210-212).  The unlawful

15 detainer proceeded to a court trial on June 4, 2012.  (*Id.*).  Judgment was entered in favor of

16 Wells Fargo and against defendants.  (*Id* at 215-239.).  Wells Fargo obtained possession of the

17 Property in July 2012.  The Property has since been sold to a third party.  (AEO Exh. X).

18 **E.      Procedural History**

19 After two motions to dismiss, this Court dismissed without leave to amend all claims

20 concerning the origination of the loan and state law Financial Code claims (predatory lending),

21 because they were barred by the applicable statute of limitations.  (See Doc. # 57 at 2).  The State

22 Civil Code § 1632 claim was also dismissed without leave, because rescission would have been

23 the only remedy, but Plaintiffs failed to allege tender of the entire amount of the loan.  (*Id.* at 7).

24 The Civil Code § 2923.5 claim was dismissed as moot, because the property was sold and the

25 only remedy under § 2923.5 is postponement of the sale.

26 Plaintiffs' remaining claims are violation Business & Professions Code §17200, common

27 law fraud (suppression of facts), preliminary and injunctive relief, negligence and a claim to set

28 aside the trustee sale.

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

F.      **Plaintiffs' Claims**

Plaintiffs' claims are premised on alleged wrongdoing in the 2009 modification. Plaintiffs allege they were told the modification they accepted in 2009 was the best terms that could be given to them.  (AOE Exh. Y ¶8).  However, Plaintiffs believe defendant discriminated against them due to their race by charging them a much higher interest rate and other loan charges than to other non-minority borrowers.  (*Id.* ¶14).  Plaintiffs further allege Wells Fargo suppressed the terms of the modification from them (AOE Exh. H at 76) and also suppressed the fact that Plaintiffs did not qualify for the loan modification offered, but instead, qualified for a modification that would not reduce the equity in their property.  (AOE Exh. Y ¶26).  Plaintiffs also believe the loan modification they accepted was outside their financial capacity and that Wells Fargo should have known this and not have offered them the modification.  (*Id.* ¶42).  Finally, Plaintiffs seek to set aside the completed trustee sale to right wrongs committed by defendants. (*Id.* ¶49).

3.      **WELLS FARGO IS ENTITLED TO SUMMARY JUDGMENT ON THE UNFAIR BUSINESS PRACTICES CLAIM (1ST)**

Plaintiffs allege Wells Fargo violated this section by discriminating against Plaintiffs in connection with the loan product they received because of their race and in suppressing facts concerning the loan modification.  (AOE Exh. Y ¶18).  According to Plaintiffs, Wells Fargo suppressed the fact that Plaintiffs' "loan modification interest rates were variable"; the "interest rates would increase to the point that Plaintiffs would not be able to make their payments"  (AOE Exh. Z at 241, 243, 245-246) and Plaintiffs "did not qualify for the loan terms imposed on them under" the 2009 modification they were offered (AOE Exh. Y ¶26).

To state a claim for a violation of California's Unfair Competition Law ("UCL"), Plaintiffs must allege particular facts showing ongoing unlawful, unfair, and fraudulent business acts committed by the defendant.  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1143 (2003); *Khoury v. Maly's of Cal., Inc.*, 14 Cal. App. 4th 612, 619 (1993).  "Each prong of the UCL is a separate and distinct theory of liability."  *Birdsong v. Apple, Inc.*, 590 F.3d 955, 959 (9th Cir. 2009).  Plaintiffs cannot prevail under any of the three prongs.

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

**A.**     <u>**Plaintiffs Cannot Prove That Wells Fargo Engaged In Unlawful Business Practices**</u>

"[A]n action based on [Section 17200] to redress an unlawful business practice 'borrows' violations of other laws and treats these violations…as unlawful practices, independently actionable under *section 17200 et seq.* and subject to the distinct remedies provided thereunder." *Farmers Ins. Exch. v. Super. Court*, 2 Cal.4th 377, 383 (1992) (quotations and citations omitted). Where a plaintiff cannot state a claim under the "borrowed" law, she cannot state a Section 17200 claim either.); *Ingels v. Westwood One Broad. Servs., Inc.*, 129 Cal. App. 4th 1050, 1060 (2005).[3]

Here, the TAC asserts that Wells Fargo discriminated against them and committed fraud with respect to the modification terms of their loan.  They base their discrimination claim entirely on their Hispanic ethnicity; but only race-neutral criteria are used when modifying a loan (Dolan Decl. ¶19).  Plaintiffs cannot establish that the terms of their modification were less favorable than those offered to others.  In addition, the claim as alleged is a mere conclusion.  In dismissing an equally vague allegation under the State Unruh Civil Rights Act, the court in *Akhavein v. Argent Mortg. Co.*, 2009 U.S. Dist. LEXIS 61796, *15-16, 20 (N.D. Cal. July 17, 2009) held:

> A Plaintiff seeking to establish a cause of action under the Unruh Act must plead and prove intentional  discrimination in public accommodations in violation of the terms of the Act. [citation]  **Plaintiffs plead that "Defendants violated California Civil Code § 51 in that Defendants discriminated against, boycotted, or blacklisted, refused to lend to, contract with, or refinance, or offered significantly less worthy credit to the Plaintiffs based on his/her race, color, religion, ancestry, and national origin." FAC P 83. These allegations are vague and conclusory, and seem contradictory to plaintiffs' allegation that Argent did "lend to" and "contract with" plaintiffs in entering into loan agreements with them.** Plaintiffs do not allege how Argent or other Defendants took into account plaintiffs' race, color, religion, ancestry and national origin as there is no mention of Defendants factoring these criteria in considering the

---

[3] *See also Kariguddaiah v. Wells Fargo Bank, N.A.,* 2010 U.S. Dist. LEXIS 65561at *7 (N.D. Cal. July 1, 2010) (dismissing Section 17200 claim due to plaintiff's failure to state a claim for either breach of contract or wrongful foreclosure upon which the § 17200 claim was based); *Powell v. Residential Mortg. Capital*, 2010 U.S. Dist. LEXIS 59698 at * 9 (N.D. Cal. May 24, 2010) (same); *Berryman v. Merit Property Mgmt. Inc.*, 152 Cal. App. 4th 1544, 1554 (2007) ("Thus, a violation of another law is a predicate for stating a cause of action under" Section 17200); *Lazar v. Hertz Corp.*, 69 Cal. 4th 1494, 1505 (1999) (Section 17200 "borrows violations of other laws . . . and makes those unlawful practices actionable").

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1        mortgage loan.

2   *Id.* (emphasis added).

3        Here, Plaintiffs' allegations are equally conclusory and devoid of any underpinnings

4   factual basis.  Moreover, they admit they do not have any evidence, but rather base this claim on

5   investigations conducted by the California Attorney General and United States Department of

6   Justice they heard about on TV, on the radio or in the newspaper.[4]  (AOE Exh. H at 82-83, 89,

7   101).  Wells Fargo's evidence demonstrates that the decision to modify the loan was based solely

8   on entirely race-neutral financial criteria.  (Dolan Decl. ¶15).  In fact, Wells Fargo does not

9   consider the ethnicity of a borrower in the decision to modify a loan and Plaintiffs have no

10  relevant legally cognizable evidence to the contrary.  (*Id.*).  Plaintiffs are attempting to

11  impermissibly use a discrimination claim to "rewrite" their loan terms.

12        Furthermore, Wells Fargo was not required to modify Plaintiffs' loan even if they did

13  qualify.  *See, e.g.,  Mabry v. Superior Court*, 185 Cal. App. 4th 208, 222-23, 231 (2010) (holding

14  that there is no right to a loan modification under Civil Code §§ 2923.5 or 2923.6); *Hoffman v.*

15  *Bank of America, N.A.*, 2010 U.S. Dist. LEXIS 70455, *15 (N.D. Cal. June 30, 2010) ("lenders

16  are not required to make loan modifications for borrowers that qualify under HAMP nor does the

17  servicer's agreement confer an enforceable right on the borrower").  Wells Fargo could have

18  declared a default from Plaintiffs' six months of missed payments and proceeded with the

19  foreclosure process in June 2009.  (*See* Dolan Decl. ¶19; AOE Exhs. A at 4 ¶7B & B at 24 ¶28).

20  Under these circumstances, it is inconceivable that there could have been any improper

21  motivation in offering the Plaintiffs a loan modification, without which they would have lost the

22  Property years earlier.

23        As for their fraud claims, for the reasons explained in Section 4, *infra,* Plaintiffs cannot

24  prevail.  Thus, the derivative Section 17200 claim derivative of fraud fails as well.

25  / / /

26  / / /

27

28  [4] Mr. Vargas also testified that he believes Wells Fargo discriminated against him and his wife
    because of a culture of discrimination in the U.S.  (AOE Exh. H at 83).

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1

**B.**     **Plaintiffs Cannot Prove That Wells Fargo Engaged In Unfair Business Practices**

2          An unfair business practice under Section 17200 is "one that either offends an established

3    public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to

4    consumers." *McDonald v. Coldwell Banker,* 543 F.3d 498, 506 (9th Cir. 2008); *Glenn K.*

5    *Jackson Inc. v. Roe*, 273 F.3d 1192, 1203 (9th Cir. 2001). In *Cel-Tech Commc'ns, Inc. v. L.A.*

6    *Cellular Tel. Co*., 20 Cal.4th 163 (1999)*,* the California Supreme Court cautioned against an

7    overly broad interpretation of "unfair" in the context of Section 17200, noting that "[v]ague

8    references to 'public policy,' for example, provide little real guidance." *Id.* at 185.  Thus, "where

9    a claim of an unfair act or practice is predicated on public policy, . . the public policy which is

10   predicate to the action must be 'tethered' to specific constitutional, statutory or regulatory

11   provisions." *Gregory v. Albertson's, Inc*., 104 Cal. App. 4th 845, 854 (2002).

12         Here, Plaintiffs lack evidence sufficient to prove that Wells Fargo's conduct offended any

13   "established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially

14   injurious to consumers." *McDonald,* 543 F.3d at 506.  There is no dispute that Plaintiffs, through

15   an independent loan modification agent they retained, submitted an application to Wells Fargo to

16   modify the terms of their loan.  (AOE Exhs. H, J, K). Though Plaintiffs allege that Wells Fargo

17   discriminated against them in the product they received (AOE Exh. Y ¶18), Wells Fargo's

18   uncontroverted evidence shows that Plaintiffs qualified for the only modification available at that

19   time: a step rate fixed mortgage.  (*See* Dolan Decl. ¶20).

20         As for their fraud claims, it is undisputed that (1) the modification agreement that Wells

21   Fargo prepared and submitted to Plaintiffs clearly discloses that the interest rate will increase

22   annually for the first five years and, is thereafter fixed for the remaining life of the loan; and (2)

23   Wells Fargo never suppressed any facts from Plaintiffs as the terms were provided to them in

24   written form. (*See, e.g.*, Dolan Decl. ¶¶21-23; AOE Exhs. M through P).

25   **C.**     **Plaintiffs Cannot Prove That Wells Fargo Engaged In Any Fraudulent Business**

26                **Practices**

27         As demonstrated in Section 4, *infra,* Plaintiffs lack any evidence that Wells Fargo

28   committed fraud.  Wells Fargo did not conceal any material facts in the modification agreement;

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   nor can Plaintiffs prove they would have taken other steps had Wells Fargo not offered them the

2   modification or that they were harmed by any suppression of fact.

3   **D.    The UCL Claim Cannot Survive Without Tender**

4        On a final note, Plaintiffs' UCL claims improperly request damages. (AOE Exh. Y ¶¶21-

5   23).  Case law is well-settled that only equitable remedies are available under the UCL –

6   specifically, restitution and injunctive relief.  *Korea Supply Co. v. Lockheed Martin Corp.*, 29

7   Cal. 4th 1134, 1144-45 (2003); *Kasky v. Nike, Inc.*, 27 Cal. 4th 939 (2002).

8        As discussed in Section 5, *infra*, Plaintiffs cannot obtain injunctive relief without tender

9   of their debt.  *See also Sipe v. McKenna*, 88 Cal. App. 2d 1001, 1006 (1948) ("A party may not

10   without payment of the debt, enjoin a sale by a trustee under a power conferred by a deed of

11   trust, or have his title quieted against the purchaser at such a sale . . ."); *Touli v. Santa Cruz*

12   *County Title Co.*, 20 Cal. App. 2d 495, 499-500 (1937) (rescission of deed of trust is only an

13   available remedy once the borrower tenders his full debt); *Meetz v. Mohr*, 141 Cal. 667, 673

14   (1904) (injunction denied due to lack of tender). Indeed, a complaint that does not allege such a

15   tender does not state a cause of action.  *McElroy v. Chase Manhattan Mortgage Corp.*, 134 Cal.

16   App. 4th 388, 391-94 (2005).

17   **4.    WELLS FARGO IS ENTITLED TO SUMMARY JUDGMENT ON THE COMMON**

18   **LAW FRAUD (SUPPRESSION OF FACTS) CLAIM (2ND)**

19        Plaintiffs' fraud claim asserts that defendants suppressed the fact that Plaintiffs' "loan

20   modification interest rates were variable", their "interest rates would increase to the point that

21   Plaintiffs would not be able to make their payments"  (AOE Exh. Z at 240-241) and Plaintiffs

22   "did not qualify for the loan terms imposed on them under" the 2009 modification they were

23   offered (AOE Exh. Y ¶26).  Plaintiff testified that payment terms were suppressed from him as

24   well.  The elements of fraudulent concealment or suppression of fact are:  (1) defendant

25   concealed a material fact, (2) defendant was under a duty to disclose the fact to plaintiff, (3)

26   defendant intentionally concealed the fact with the intent to defraud plaintiff, (4) plaintiff was

27   unaware of the fact and would not have acted as he did if he had known of the concealed fact,

28   and (5) as a result of the concealment, plaintiff sustained damage. *Kaldenbach v. Mutual of*

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

*Omaha Life Ins. Co.*, 178 Cal. App. 4th 830, 850 (2009).  For a number of reasons discussed below, Plaintiffs cannot prevail on this claim.

**A.     Wells Fargo Did Not Stand In A Relationship With Plaintiffs Which Would Give Rise To A Duty To Disclose The Information Allegedly Concealed**

"The general rule for liability for nondisclosure is that even if material facts are known to one party and not the other, failure to disclose those facts is not actionable fraud unless there is some fiduciary or confidential relationship giving rise to a duty to disclose."  *Kovich v. Paseo Del Mar Homeowners' Ass'n.*, 41 Cal. App. 4th 863, 866 (1996).  Lenders, however, do not stand in a fiduciary relationship with borrowers.  *Perlas v. GMAC Mortg., LLC*, 187 Cal. App. 4th 429, 436 (2010) (dismissing fraudulent concealment claim because lender did not owe borrowers a fiduciary duty).  Further, financial institutions ordinarily do not owe a duty of care to borrowers when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money.  *Nymark v. Heart Fed. Sav. & Loan,* 231 Cal. App. 3d 1089, 1096 (1991).

In *Manosca v. Wachovia Mortg.*, 2011 U.S. Dist. LEXIS 78609, *14-15 (N.D. Cal. July 20, 2011), borrowers alleged that Wells Fargo concealed "key loan information," including "how much and how soon the interest rate would increase after the teaser rate expired."  The court found that "*Nymark* and *Kovich* bar plaintiff's claim for fraudulent concealment" because Wells Fargo did not owe a duty of care or a fiduciary duty to plaintiff.  *Id.* 2011 U.S. Dist. LEXIS 78609 at *15.

Here, Wells Fargo and Plaintiffs did not stand in a fiduciary or confidential relationship with Plaintiffs, but rather, were in an unremarkable lender-borrower relationship wherein the borrowers, through the use of an independent loan modification company, sought to renegotiate the terms of their 2007 Note.  (AOE Exh. H at 41-43, I at 116).  In fact, the Plaintiffs were in a fiduciary relationship with the Loan Negotiator Group.  Plaintiffs admit the Loan Negotiator Group should have explained the terms of the modification to them.  (AOE Exh. H at 79-82). As Mr. Vargas testified, he does not know how his brokers they hid the information regarding the terms from him.  (AOE Exh. H at 56).  In the absence of a confidential or fiduciary relationship

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1 between Wells Fargo and the Plaintiffs, there can be no fraudulent concealment.

2 **B.     Wells Fargo Did Not Suppress Any Facts Concerning Plaintiffs' Modification**

3        Regardless of whether a confidential or fiduciary relationship existed between Plaintiffs

4 and Wells Fargo, Plaintiffs cannot establish that Wells Fargo suppressed any terms regarding the

5 modification or Plaintiffs' qualifications for the modification.  A claim for fraudulent

6 concealment requires Plaintiffs to show that they were unaware of the fact allegedly concealed.

7 *Kaldenbach,* 178 Cal. App. 4th at 850.  Plaintiffs cannot do so.

8        First, Plaintiffs hired a modification company to negotiate with the bank.  (AOE Exh. H

9 at 41-43, I at 116). Plaintiffs admit they did not speak with anyone at the bank nor had any

10 discussions. (AOE Exh. H at 44, 47:19-22, 50, I at 110, 116).  They provided their income

11 documents to the loan modification company.  (AOE Exh. H at 41-43, 53-55, 58-67).  They

12 signed the application, the hardship letter and the letter of authorization to permit Wells Fargo to

13 discuss the loan with Plaintiffs' authorized representative. (*Id.*)

14        After Wells Fargo reviewed Plaintiffs' application and the supporting income

15 documentation, Wells Fargo approved Plaintiffs for the only modification available to them: a

16 step rate, fixed interest loan modification.  (Dolan Decl. ¶¶18, 19).  Despite Plaintiffs assertions

17 to the contrary (AOE Exhs. Y ¶18, Z at 241), this modification is not a variable or adjustable rate

18 mortgage rate, the interest is fixed.  (AOE Exh. M, Dolan Decl. ¶¶18-20).  Indeed, according to

19 the terms of the agreement, the rate was converted from an adjustable rate loan to a fixed rate,

20 the index and margins no longer applied.  (AOE Exh. M). These terms, including payment terms,

21 interest rate was reduced to a writing and delivered to Plaintiffs via overnight delivery.  (AOE

22 Exhs. N, O). In fact, Plaintiffs signed the agreement and returned the two page agreement to

23 Wells Fargo by the date required in the agreement and remitted the required payment.  (Dolan

24 Decl. ¶¶23-24; AOE Exhs. N, O).  Plaintiffs' signatures on the modification agreement,

25 expressed their intent to be bound by these terms.  *See 20th Century Ins. Co. v. Liberty Mut. Ins.*

26 *Co.,* 965 F.2d 747, 759, n.12 (9th Cir. 1992) ("under California law, a written instrument is

27 presumed to express the true intent of the parties."); *Estate of Wilson*, 64 Cal. App. 3d 786, 802

28 (1976) (signatory's "uncorroborated assertion that she did not understand what she was doing

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   when she signed the consent form cannot be permitted to overcome the clear, explicit language

2   in the document form.").  Thus, Plaintiffs cannot establish that Wells Fargo concealed any facts

3   regarding the terms of the loan.

4          Plaintiffs' claim that Wells Fargo suppressed from them that they did not qualify for the

5   modification is unsupported conjecture.  Wells Fargo's uncontroverted evidence demonstrates

6   that after processing the financial data provided via Plaintiffs' loan modification company, the

7   Loan Negotiator Group, and signed by Plaintiffs, Plaintiffs qualified for the only modification

8   program offered by Wells Fargo at the time, MAP.  (Dolan Decl. ¶19). Contrary to the claims,

9   Plaintiffs in fact qualified for the modification.

10  **C.**   **Plaintiffs Would Not Have Acted Differently Regardless Of The Terms Of The**

11       **Modification**

12         Plaintiffs must show that they "would not have acted as [they] did if [they] had known of

13  the concealed fact . . . " and as a result of the alleged concealment, they sustained damages.

14  *Kaldenbach,* 178 Cal. App. 4th at 850.

15         Plaintiffs must show that they would have rejected the modification if they had

16  understood the interest rate increased each year for the first five years.  By June 2009, Plaintiffs

17  had not made a payment on their loan for over six months.  (Dolan Decl. ¶24; AOE Exhs. H, R,

18  S). Mr. Vargas testified that they could no longer make the payments on the loan.  (AOE Exh.

19  H). Unless Plaintiffs accepted the modification, Wells Fargo could have declared a default and

20  foreclosed on the Property in 2009.  (Dolan Decl. ¶¶16, 24). Instead, Plaintiffs modified the loan

21  and Plaintiffs were able to make the lower payments for another two years before defaulting

22  again.  (Dolan Decl. ¶¶24-25; AOE Exh. Q). Since Plaintiffs cannot establish that they would

23  have acted differently but for the purported concealment, they cannot establish an essential

24  element of their fraudulent concealment claim.

25  / / /

26  / / /

27  / / /

28  / / /

14

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

**5.   WELLS FARGO IS ENTITLED TO SUMMARY JUDGMENT ON THE REQUESTS FOR INJUNCTIVE AND DECLARATORY RELIEF**

Plaintiffs' claim for injunctive and declaratory relief is premised entirely on their allegation that Wells Fargo "refused plaintiffs' tender of their principal and interest owing" on the loan.  (AOE Exh. Y).  As such, according to Plaintiffs, they were not in breach of their obligation and Wells Fargo improperly declared a default.  (*Id.*).

Injunctive and declaratory relief are equitable remedies, not claims for relief.  (*See* Doc. #34 at 9:15-16); *Howard v. First Horizon Home Loan Corp.*, 2013 U.S. Dist. LEXIS 85585, *15-16 (N.D. Cal. June 18, 2013).  To obtain equitable relief, Plaintiffs must tender their outstanding debt.  *See FPCI Re-Hab 01 v. E&G Investments, Ltd.,* 207 Cal. App. 3d at 1021 (1989); *Sipe,* 88 Cal. App. 2d at 1006 ("A party may not without payment of the debt, enjoin a sale by a trustee under a power conferred by a deed of trust, or have his title quieted."); *Abdallah v. United Sav. Bank,* 43 Cal. App. 4th 1101, 1109 (1996).

Wells Fargo's uncontroverted evidence demonstrates that Plaintiffs never made a payment on the loan since the June 2011 payment, nor did they attempt to make a payment or cure the arrears.  Moreover, it is undisputed that Plaintiffs did not tender the debt.  (AOE Exhs. H, R).  These claims therefore fail.

**6.   WELLS FARGO IS ENTITLED TO SUMMARY JUDGMENT ON THE NEGLIGENCE CLAIM (5TH)**

**A.   The Negligence Claim Is Time-Barred.**

Plaintiffs' negligence claim asserts that Wells Fargo breached its duty of care "when it presented the plaintiffs with the 2009 modification" which contained terms which were outside of the Plaintiffs' financial ability.  (AOE Exh. Y ¶42).  This claim is barred by the two year statute of limitations. Cal. Civ. Proc. Code § 335.1

Plaintiffs received their loan modification in June 2009.  (AOE Exh. M). The two page signed modification agreement was received by Wells Fargo on June 18, 2009 and the payment processed on June 19, 2009.  (Dolan Decl. ¶¶23-24; AOE Exhs. P, Q). Plaintiffs are presumed to have read the modification document they signed.  *See Constantian v. Mercedes-Benz Co.,* 5 Cal.

2d 631, 634 (1936).  They only had to read the modification agreement to ascertain the terms of their modification or investigate whether they had the financial ability to repay the loan.  Almost three years later, in March 2012, Plaintiffs now allege Wells Fargo was negligent in processing their loan modification.  This claim in too late.  *See* Cal. Civ. Proc. Code § 335.1; *Bojorquez v. Gutierrez*, 2010 U.S. Dist. LEXIS 75205, *19 (N.D. Cal. July 26, 2010).

**B.**     **Wells Fargo Did Not Owe Plaintiffs A Duty Of Care.**

Even assuming this claim were not time barred, Plaintiffs cannot establish that Wells Fargo owed them a duty of care concerning their loan modification.  A plaintiff's "inability to plead a duty of care . . . precludes his maintenance of a cause of action on any negligence theory." *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 349 (1997).  "The determination of whether a duty exists is primarily a question of law." *Eddy v. Sharp*, 199 Cal. App. 3d 858, 864 (1988).  "[A]bsent a duty, the defendant's care, or lack of care, is irrelevant." *Software Design and Application Ltd. v. Hoeffer & Arnolt Inc.*, 49 Cal. App. 4th 472, 481 (1996).  As discussed, *supra*, "[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark,* 231 Cal. App. 3d at 1096.  "Liability to a borrower for negligence arises only when the lender 'actively participates' in the financed enterprise 'beyond the domain of the usual money lender.'" *Id.* (quoting *Wagner v. Benson*, 101 Cal. App. 3d 27, 35 (1980)).  Nothing suggests Wells Fargo acted as anything but a conventional lender in the lender-borrower relationship here.

Moreover, a lender does not have a duty to guarantee that a borrower can repay a loan.  The Court of Appeals decision in *Perlas,* 187 Cal. App. 4th at 436, is dispositive:

> "[A]bsent special circumstances . . . a loan transaction is at arm's length and there is no fiduciary relationship between the borrower and lender." . . . **A lender is under no duty "to determine the borrower's ability to repay the loan**. . . . The lender's efforts to determine the creditworthiness and ability to repay by a borrower are for the lender's protection, not the borrower's."

*Id.* (citations omitted; emphasis added).

/ / /

/ / /

Anglin Flewelling Rasmussen Campbell & Trytten llp

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

Wells Fargo owed Plaintiffs no legal duty to ensure that they could afford to repay the loan or that the loan product was in Plaintiffs' best financial interest. Indeed, a lender does not owe a borrower a duty of care in a consumer credit transaction. *Id.* Nor can Plaintiffs produce any special circumstances establishing a fiduciary relationship.

Furthermore, the overwhelming majority of courts have concluded that no duty of care is owed by a bank when evaluating a borrower for a modification. For example, the district court in *Armstrong v. Chevy Chase Bank, FSB*, 2012 U.S. Dist. LEXIS 144125, *9-13 (N.D. Cal. Oct. 3, 2012) explained that a duty of care is not even created when a lender offers the borrower a loan modification, because like the original underwriting process, a modification review and approval is simply a renegotiation of the loan terms. *See also Gonzales v. Wells Fargo Bank, N.A.*, 2012 U.S. Dist. LEXIS 154851, *20 (N.D. Cal. Oct. 29, 2012) ("A loan modification, which is nothing more than a renegotiation of loan terms, falls well within an institution's conventional money-lending role.").

Here, Wells Fargo did not owe Plaintiffs a duty of care, an essential element of any negligence claim. Plaintiffs admit they hired the Loan Negotiator to negotiate a modification of the loan with Wells Fargo. (AOE Exhs. H, J, K). In fact, as discussed previously, Plaintiffs looked to the Loan Negotiator Group to explain the process, the submissions, and the terms of the offered modification. This was a garden-variety loan transaction wherein the Plaintiffs sought to change the terms of their loan. (*See* Dolan Decl. ¶¶15-20). Plaintiffs cannot demonstrate that Wells Fargo acted as anything other than a mere lender of money, and summary judgment in favor of Wells Fargo should be granted.

## 7. PLAINTIFFS' CANNOT PREVAIL ON THEIR CLAIM TO SET ASIDE THE TRUSTEE SALE (6TH)

### A. Plaintiffs Cannot Establish A Claim Entitling Them To Set Aside The Trustee Sale. They Also Fail To Name A Necessary And Indispensable Party

Plaintiffs seek to set aside the trustee sale "as a measure to right the wrongs committed by the defendants" due to "defendant's illegal conduct as alleged in each of the causes of actions set forth in this complaint" (AOE Exh. Y ¶49). Plaintiffs fail to allege any basis, in law or equity,

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   upon which sale could be set aside.

2   In July 2012, Wells Fargo sold the Property to a third party who is not joined in this

3   action.  Plaintiffs cannot offer any reason why the present owner is not named in claims affecting

4   title to the Property in violation of Federal Rule of Civil Procedure 19.  The Ninth Circuit has

5   held that "'no procedural principle is more deeply imbedded in the common law than that, in an

6   action to set aside a lease or a contract, all parties who may be affected by the determination of

7   the action are indispensable.'"  *Virginia Surety Co. v. Northrop Grumman Corp.*, 144 F.3d 1243,

8   1248 (9th Cir. 1998), quoting *Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325 (9th Cir. 1975).

9   Without requisite joinder of an indispensable party, summary judgment is proper.

10  **B.      Plaintiffs' Claim to Set Aside the Trustee Sale Cannot Survive Absent Tender Of**

11          **The Debt**

12  Plaintiffs cannot obtain any equitable relief of setting aside the trustee sale without tender

13  of the debt.  *Sipe ,* 88 Cal. App. 2d at 1006 ("A party may not without payment of the debt,

14  enjoin a sale by a trustee under a power conferred by a deed of trust, or have his title quieted.");

15  *see also Abdalla,* 43 Cal. App. 4th at 1109.  As numerous California courts have recognized,

16  claims that seek to prevent a foreclosure "generally cannot go forward unless the plaintiff has at

17  least alleged a credible offer to tender the indebtedness."  *Collins v. Power Default Services, Inc.,*

18  2010 U.S. Dist. LEXIS 3361, *4-6 (N.D. Cal. Jan. 24, 2010) (citing California state and federal

19  cases).  "This requirement prevents 'a court from uselessly setting aside a foreclosure sale on a

20  technical ground when the party making the challenges has not established the ability to purchase

21  the property.'"  *Id.* at *5 (citing cases); *see also  Alicia v. GE Money Bank*, 2009 U.S. Dist.

22  LEXIS 60813, *7-8 (N.D. Cal. July 16, 2009) ("When a debtor is in default of a home mortgage

23  loan, and a foreclosure is either pending or has taken place, the debtor must allege a credible

24  tender of the amount of the secured debt to maintain any cause of action for foreclosure.").

25  As previously discussed, Plaintiffs cannot establish they tendered, or attempted to tender

26  the debt.  In fact, they admit they stopped making payments and did not make another attempt to

27  pay their loan.  (AOE Exh. H, R).  Thus, even if Plaintiffs could demonstrate a basis to unwind

28  the trustee sale or had they named the proper parties, their fatal admission of failure to tender

defeats this claim.

### 8. PLAINTIFFS' CLAIMS ARE PREEMPTED BY THE HOME OWNERS' LOAN ACT

**A.  As A Federally-Chartered Savings Bank, Wachovia Mortgage, FSB Operated Under HOLA.**

During the Great Depression, Congress enacted Home Owner's Loan Act ("HOLA") to "restore the public's confidence in savings and loan associations at a time when 40% of home loans were in default." *Bank of America v. The City & County of San Francisco*, 309 F.3d 551, 559 (9th Cir. 2002). HOLA was enacted in part due to Congressional dissatisfaction with the regulation of home financing by the states. *American Banker Ass'n. v. Lockyear*, 239 F. Supp. 2d 1000, 1010 (E.D. Cal. 2002).

The originating lender, World Savings Bank, FSB, was a federal savings bank regulated by the Office of Thrift Supervision ("OTS") and organized and operated under the ("HOLA"), 12 U.S.C. § 1461, *et seq.*  (*See* AOE Exhs. C through E). World Savings Bank had changed its name to Wachovia Mortgage when the loan was modified in June 2009 and was also a federal savings bank chartered under HOLA and overseen by the OTS.  (*Id.*).

**B.  Regulations Promulgated By The OTS Preempt Any State Law That Affects The Operation Of A Federal Savings Association**

The OTS "occupies the entire field of lending regulation for federal savings associations." 12 C.F.R. § 560.2. OTS regulations issued pursuant to HOLA are "intended to preempt all state laws purporting to regulate any aspect of the lending operations of a federally chartered savings association, whether or not OTS has adopted a regulation governing the precise subject of the state provision."  *Lopez v. World Sav. & Loan Ass'n*, 105 Cal. App. 4th 729, 738 (2003); *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1004-05 (9th Cir. 2008) (HOLA regulations are "so pervasive as to leave no room for state regulatory control."); 12 C.F.R. § 545.2(a).

The preemption analysis under HOLA is simple, as the OTS Final Rule, 61 Fed. Reg. 50951, 50966-67 (Sept. 30, 1996) instructs.  *Silvas*, 514 F.3d at 1005.  Step one determines

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1  whether the type of state law at issue appears on the list set forth in 12 C.F.R. § 560.2(b), which

2  lists the types of state laws that HOLA preempts.  If that type of state law appears on the list, the

3  analysis ends there and the law is preempted; there is no step two.  The OTS' construction of its

4  own regulation 560.2 "must be given controlling weight." *Silvas,* 514 F.3d at 1004-05, citing

5  *Auer v. Robbins*, 519 U.S. 452 (1997). Any presumption against preemption of state law does not

6  apply to HOLA, and any doubt should be resolved in favor of preemption.  *Id.*

7        Pursuant to HOLA, the OTS was granted power, "under such regulations as [it] may

8  prescribe – to provide for the organization, incorporation, examination, operation, and regulation

9  of…Federal savings associations[.]"  12 U.S.C. § 1464(a).  OTS regulations are "preemptive of

10  any state law purporting to address the subject of the operations of a federal savings association."

11  12 C.F.R. § 545.2.  The OTS "occupies the entire field of lending regulation for federal savings

12  associations…," and a federal savings bank, "may extend credit as authorized under federal law,

13  including this part, without regard to state laws purporting to regulate or otherwise affect their

14  credit activities."  12 C.F.R. § 560.2(a).  *Silvas,* 514 F.3d at 1004-05.

15  **C.**    **State Laws Preempted By HOLA**

16        OTS regulations preempt state laws that would impose requirements on federal savings

17  banks or their successors[5] regarding:

18          (b)(4) The terms of credit…;

19          (b)(9) Disclosure and advertising, including laws requiring specific
        statements, information, or other content…;

20
21          (b) (10) Processing, origination, servicing, sale or purchase of, or investment
        or participation in, mortgages ….

22  12 C.F.R. § 560.2(b) (emphasis added).

23

24

25  _____

26  [5]  HOLA applies to successors of federal savings banks.  *DeLeon v. Wells Fargo Bank, N.A.*, 729 F. Supp. 2d 1119 (N.D. Cal. 2010); *see also Guerrero v. Wells Fargo Bank, N.A.*, 2010 U.S. Dist. LEXIS 96261 (C.D. Cal. Sept. 14, 2010) ("Where a national association, such as [Wells Fargo Bank, N.A.], acquires the loan of a federal savings bank, it is proper to apply preemption under HOLA."); *Zlotnik v. U.S. Bancorp, et al.*, 2009 U.S. Dist. LEXIS 119857, *17-26 (N.D. Cal. Dec. 22, 2009).

27

28

**D.**   **HOLA Preempts Plaintiffs' State Law Claims**

The premise of Plaintiffs' action concerns the terms of the June 2009 modification offered by Wells Fargo's predecessor Wachovia Mortgage, FSB.  Plaintiffs allege, *inter alia*, they qualified for a fixed rate note, but were instead provided an adjustable rate note they could not afford (AOE Exh. Y ¶26); Wells Fargo refused to provide a modification that would not reduce the equity (*id.* ¶26); Wells Fargo was required, and failed, to ascertain their ability to repay the loan prior to modifying the loan (*id.* ¶42); Wells Fargo concealed the true terms of the modification (AEO Exh. H at 76); and Wells Fargo discriminated against them in the modification process (AEO Exh. Y ¶14).  Claims premised on these allegations seek to impose additional requirements on lenders, falling on the regulatory side, and are thus preempted by HOLA.  *See Harris v. Wells Fargo Bank, N.A.,* 2013 U.S. Dist. LEXIS 61847, *13-21 (N.D. Cal. Apr. 30, 2013).

In *Cosio v. Simental*, 2009 U.S. Dist. LEXIS 8385, (C.D. Cal. Jan. 27, 2009), the district court found that a plaintiff's claims that defendants convinced plaintiffs to enter into "complicated, risky and oppressive" loans and failed to disclose "the terms, risks and consequences of that type of loan," triggered several provisions of Paragraph (b).  *Id.* at *13-15.  The court held that "because the claims, as applied, turn on types of state law listed in § 560.2(b), the preemption analysis ends there.  Plaintiffs' … claims are preempted." *Id.* at *15.

Similarly, in *Nava v. Virtual Bank*, , 2008 U.S. Dist. LEXIS 72819 (E.D. Cal. July 16, 2008), the court held that a claim that, Plaintiffs, is primarily based on "a failure to properly disclose and represent the true interest rate of the loan and that negative amortization was certain to occur," clearly "implicates § 560.2 (b)(9) since its application would purport to impose requirements on the types of disclosures made by defendants" and was therefore preempted.  *Id.* at *19-20.  *See also Coppes v. Wachovia Mortg. Corp.*, 2010 U.S. Dist. LEXIS 115865 (E.D. Cal. Oct. 29, 2010) (HOLA preempted claim based on the alleged non-disclosure of an interest rate); *Andrade v. Wachovia Mortgage*, 2009 U.S. Dist. LEXIS 34872 (S.D. Cal. Apr. 21, 2009) ("the factual underpinnings of Plaintiff's state law claims fall within HOLA's preemptive scope"); *Ahmad v. World Savings Bank*, 2009 U.S. Dist. LEXIS 45210 (E.D. Cal. May 29,

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   2009); *Lopez,* 105 Cal. App. 4th 729 (California state court finding federal law preempted

2   borrower's claims under state law).

3       Moreover, numerous federal courts have found that HOLA preempts such claims against

4   a lender arising out of the processing of a loan modification application.  *See Sato v. Wachovia*

5   *Mortg., FSB,* 2011 U.S. Dist. LEXIS 75418, *20 (N.D. Cal. July 13, 2011) (dismissing claim

6   alleging that lender violated Civ. Code § 2923.6 by failing to modify her loan; such a claim

7   "clearly falls under the preemption provisions for 'processing, origination, sale or purchase of ...

8   mortgages' and 'terms of credit'"); *Zarif vs. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. Lexis

9   29867, *8-9 (S.D. Cal. Mar. 23, 2011) ("As currently pled, each of Plaintiffs' claims specifically

10  challenge the processing of Plaintiffs' loan modification application and servicing of Plaintiffs'

11  mortgage, and fall within the specific types of preempted state laws listed in § 560.2(b)(4) &

12  (10).  Accordingly, each of Plaintiff's claims are preempted by HOLA.").

13      Accordingly, summary judgment in favor of Wells Fargo and against Plaintiffs should be

14  granted as to Plaintiffs' claims for Business & Professions Code § 17220, fraud and negligence

15  to the extent they are based on the terms of the modification, how the modification was

16  calculated or Wells Fargo's purported duty to assess Plaintiffs' financial ability to repay the loan.

17      **9.**    **THE COURT SHOULD GRANT PARTIAL SUMMARY JUDGMENT BY**

18          **DENYING PUNITIVE DAMAGE RECOVERY**

19      Exemplary damages are recoverable in only very limited circumstances.  Specifically,

20  Plaintiffs cannot show that Wells Fargo is guilty of oppression, fraud or malice.  Cal. Civ. Code

21  § 3294(a). Moreover, the statute requires "malice among corporate leaders," specifically its

22  "leadership group of 'officers, directors, and managing agents.'"  Otherwise, "ratification" is

23  mandatory.  Even "ratification" requires "actual knowledge" that the renegade employee acted

24  "maliciously."  *Cruz v. Homebase,* 83 Cal. App. 4th 160, 167-68 (2000).

25      Regarding the modification, that Wells Fargo acted without malice, oppression, or fraud

26  is confirmed by the Michael Dolan testifying that Wells Fargo offered Plaintiffs a modification

27  based on financial criteria they provided to the bank.  (Dolan Decl. ¶20). The Loan file does not

28

1    contain any information that an officer, director or managing agent of Wells Fargo played any

2    role in the modification decisions.

3          Plaintiffs cannot provide any evidence that punitive damages are appropriate here.  As

4    such, partial summary judgment is warranted as to punitive damages.

5                              **10.   <u>CONCLUSION</u>**

6          Plaintiffs lack the evidence needed to prove their claims.  They cannot escape the statute

7    of limitations.  They also cannot establish a suppression of any material facts, intent to deceive,

8    reliance, or any damages.  For the foregoing reasons, Wells Fargo requests judgment as to each

9    of Plaintiffs' claims.

10         Alternatively, Wells Fargo asks the Court to enter partial summary judgment as to (1) the

11   Section 17200 claim; (2) the common law fraud (suppression of facts) claim; (3) the preliminary

12   and injunctive relief claim, (4) the negligence claim; (5) the claim to set aside the trustee's sale;

13   and (6) all claims for damages in the action.

14                                          Respectfully submitted,

15   Dated:  July 11, 2013                   ANGLIN, FLEWELLING, RASMUSSEN,
                                             CAMPBELL & TRYTTEN LLP
16
17                                           By:   /s/ E. Christine Hehir
                                                  E. Christine Hehir
18                                                chehir@afrct.com
                                             Attorneys for Defendant WELLS FARGO BANK,
19                                           N.A., successor by merger with Wells Fargo Bank
                                             Southwest, N.A. f/k/a Wachovia Mortgage, FSB
20                                           f/k/a World Savings Bank, FSB ("Wells Fargo")

21

22

23

24

25

26

27

28

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1

## <u>CERTIFICATE OF SERVICE</u>

2

3    I, the undersigned, declare that I am over the age of 18 and am not a party to this action. I am employed in the City of Pasadena, California; my business address is Anglin, Flewelling, Rasmussen, Campbell & Trytten LLP, 199 S. Los Robles Avenue, Suite 600, Pasadena, California  91101-2459.

4

5    On the date below, I served a copy of the foregoing document entitled:

6    **NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

7

on the interested parties in said case as follows:

8

9    *Served Electronically Via the Court's CM/ECF System:*

10

11    *Counsel for Plaintiffs:*

12    Ephraim O. Obi
LAW OFFICES OF EPHRAIM O. OBI

13    A Professional Law Corporation

14    3255 Wilshire Blvd., Suite 1004
Los Angeles, California 90010

15    Tel: (213) 252-9680; Fax: (213) 252-9203
ephraimobi@sbcglobal.net

16

*Served By Means Other than Electronically Via the Court's CM/ECF System:*

*Association of Counsel for Plaintiffs:*

*Zachary A. Toran, Esq.*
*LAW OFFICES OF ZACHARY A. TORAN*
*264 20th Avenue*
*San Francisco, CA 94121*
*Tel: (415) 850-9067; Fax: (415) 752-0966*

17    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made.  This declaration is executed in Pasadena, California on July 11, 2013.

18

19

20    Christine Daniel                                          /s/ Christine Daniel

21    (Type or Print Name)                              (Signature of Declarant)

22

23

24

25

26

27

28