UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN MANUEL VARGAS, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>WELLS FARGO BANK N.A., et al.,<br><br>  Defendants. | Case No. 12-cv-02008-JST<br><br>**ORDER RE: LACK OF SUBJECT MATTER JURISDICTION**<br><br>Re: ECF No. 92 |

Before the Court is the question of whether a national banking association is a citizen only of the state in which it maintains its "main office," or whether it is also a citizen of the state in which it maintains its principal place of business. Because Plaintiffs are California citizens, and Wells Fargo is incorporated in South Dakota but its prinicipal place of business is in California, the answer to that question will determine whether this action must be remanded to state court.

**I. BACKGROUND**

Plaintiffs Juan Manual Vargas and Hilda Vargas filed this action in San Mateo County Superior Court on March 19, 2012, against Defendants "Wells Fargo Bank, N.A. aka Wachovia Mortgage, a division of Wells Fargo Bank, N.A. and f/k/a Wachovia, Mortgage, FSB formerly known as World Savings Bank, FSR, as beneficiary," and Cal-Western Reconveyance Corp. Wells Fargo removed the action to this Court on April 20, 2012, based on diversity of citizenship pursuant to 28 U.S.C. §§ 1332 and 1441. ECF No. 1. The Notice of Removal argued that Cal-Western Reconveyance Corp., a California corporation, was fraudulently joined, and that Wells Fargo is a citizen of South Dakota, whereas Plaintiffs are citizens of California. Id. Defendant Cal-Western Reconveyance Corp. has not appeared in this action, and the record contains no evidence that it has been served. On July 25, 2013, Wells Fargo filed a notice of bankruptcy

petition stating that EC Closing Corp., formerly known as Cal-Western Reconveyance Corp., filed a Chapter 11 bankruptcy petition in the District of Delaware, Case No. 13-11619-BLS. The Complaint filed in state court alleges that Cal-Western Reconveyance Corp. is a California Corporation.

Following two motions to dismiss, ECF Nos. 34, 57, Plaintiffs filed their operative Third Amended Complaint on January 10, 2013, ECF No. 64 ("Complaint"). The Complaint asserts five causes of action arising out of alleged racial discrimination in the modification of a home loan: (1) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, (2) common law fraud, (3) injunctive and declaratory relief, (4) negligence, and (5) to set aside the foreclosure sale of Plaintiffs' home.

Wells Fargo moved for summary judgment as to each cause of action on July 11, 2013. Mot., ECF No. 74. After the motion was fully briefed, the Court issued an Order to Show Cause why this case should not be remanded for lack of subject matter jurisdiction because Wells Fargo may be a citizen of California, defeating diversity. ECF No. 92 (citing Martinez v. Wells Fargo Bank, No. 12-cv-6006-EMC, 2013 WL 2237879, ___ F. Supp. 2d ___ (N.D. Cal. May 21, 2013)).

## II. LEGAL STANDARD

"Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "If at any time before final judgment, it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). District courts have an independent duty to establish subject matter jurisdiction over a removed action regardless of whether a party raises the issue. United Investors Life Ins. Co. v. Waddell & Reed Inc., 360 F.3d 960, 967 (9th Cir. 2004).

The burden of establishing federal jurisdiction lies with the party asserting it. Hertz Corp. v. Friend, 559 U.S. 77, 96 (2010). The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir.1992) (citations omitted). Thus, "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of

1  removal in the first instance." Id. The "strong presumption" against removal jurisdiction must be
2  overcome by the removing party. Id.; Abrego v. Dow Chemical Co., 443 F.3d 676, 685 (9th Cir.
3  2006). Here, the removing party is Wells Fargo.

### III. ANALYSIS

For purposes of determining federal court diversity jurisdiction, corporations are "deemed to be a citizen of every State and foreign state by which it has been incorporated" and, since 1958, "of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). See Act of July 25, 1958, 72 Stat. 415. State-chartered banks usually fit within the diversity statute, but national banks, chartered by the Comptroller of the Currency of the U.S. Treasury, do not, as they are not incorporated by any state. See Wachovia Bank v. Schmidt, 546 U.S. 303, 306 (2006). In 1948, at a time when the diversity statute did not address corporate citizenship, Congress provided: "All national banking associations shall, for the purposes of all other actions by or against them, be deemed citizens of the States in which they are respectively located." 28 U.S.C. § 1348. See Act of June 25, 1948, 62 Stat. 933. The corporate dual citizenship test was introduced by Congress ten years later.

In Schmidt, the Supreme Court recognized a circuit split on the question of national bank citizenship for diversity purposes. In Firstar Bank, N.A. v. Faul, 253 F.3d 982, 993–94 (7th Cir. 2001), the Seventh Circuit held that national banks are "located" in, and therefore citizens of the states both in which they have their main office and principal place of business (if those states are different). In Horton v. Bank One, N.A., 387 F.3d 426, 431 (5th Cir. 2004), the Fifth Circuit followed suit. The Fourth Circuit in Schmidt and the Second Circuit in World Trade Ctr. Properties, L.L.C. v. Hartford Fire Ins. Co., 345 F.3d 154, 161 (2d Cir. 2003), held that national banks are "located" in, and therefore citizens of every state in which they maintain branches.

Recognizing the background principle of jurisdictional parity between national and state banks, the Court reversed the Fourth Circuit because "the access of a federally chartered bank to a federal forum would be drastically curtailed in comparison to the access afforded state banks and other state-incorporated entities," and there was no evidence Congress intended such a result. Schmidt, 546 U.S. at 307. However, the Court only held "that a national bank, for § 1348

purposes, is a citizen of the State in which its main office, as set forth in its articles of association, is located."[1] Schmidt, 546 U.S. at 307. The Supreme Court did not decide whether, in addition to the state in which a national bank's main office is located, national banks are also citizens of states in which they have their principal place of business; the bank in Schmidt had its principal place of business and main office in the same state. In a footnote, however, the Court noted:

> To achieve complete parity with state banks and other state-incorporated entities, a national banking association would have to be deemed a citizen of both the State of its main office and the State of its principal place of business. Congress has prescribed that a corporation "shall be deemed to be a citizen of any State by which it has been incorporated *and* of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1) (emphasis added). The counterpart provision for national banking associations, § 1348, however, does not refer to "principal place of business"; it simply deems such associations "citizens of the States in which they are respectively located." The absence of a "principal place of business" reference in § 1348 may be of scant practical significance for, in almost every case, as in this one, the location of a national bank's main office and of its principal place of business coincide.

Id. at 317 n.9 (citing Horton, 387 F.3d at 431 and n.26; Firstar, 253 F.3d at 993–94).

Parity between national banks on the one hand, and "state banks and other state-incorporated entities" on the other, was the primary basis for the Court's holding in Schmidt. As the Court observed, "while corporations ordinarily rank as citizens of at most 2 States, Wachovia, under the Court of Appeals' novel citizenship rule, would be a citizen of 16 States." Id. at 317. Parity between national banks and state-incorporated entities was also the primary basis for the decisions in Horton and Firstar. See Horton, 387 F.3d at 436 ("We hold that the definition of "located" is limited to the national bank's principal place of business and the state listed in its organization certificate and its articles of association. This results in a national bank's having

---

[1] Upon formation, national banking associations must "make an organization certificate, which shall specifically state," *inter alia*, "[t]he place where its operations of discount and deposit are to be carried on, designating the State, Territory, or District, and the particular county and city, town, or village." 12 U.S.C. § 22. That place becomes the bank's "main office." See Schmidt, 546 U.S. at 308 (citing Office of the Comptroller of the Currency, Instructions — Articles of Association, Specific Requirements ¶ 12, included in Clerk of Supreme Court's case file).

4

1 access to federal courts by diversity jurisdiction to the same extent as a similarly situated state
2 bank *or corporation*.") (emphasis added); Firstar, 253 F.3d at 993 ("'located' should be construed
3 to maintain jurisdictional equality between national banks and state banks *or other corporations*.
4 In order to maintain this parity, national banks would need potentially to be citizens of two
5 different states, since under 28 U.S.C. § 1332(c)(1) corporations are considered to be citizens of
6 both where their principal place of business is located and their state of incorporation.") (emphasis
7 added).

Wells Fargo's main office is in South Dakota. Its principal place of business is in California. Wells Fargo urges the Court to reject the tests adopted in Horton and Firstar, and to hold that Wells Fargo and other national banks are citizens only of the states in which their main offices are located, despite the Supreme Court's focus in Schmidt on parity between national banks, state banks, and other state-incorporated entities. Wells Fargo relies on the legislative history of 28 U.S.C. § 1348, recent legislation pertaining to federal savings associations, and caselaw Wells Fargo urges must control. The Court addresses each argument in turn.

**A.  Legislative History**

"National banks are 'instrumentalit[ies] of the federal government'" Bank of Am. v. City & Cnty. of San Francisco, 309 F.3d 551, 561 (9th Cir. 2002) (quoting Marquette Nat'l Bank v. First of Omaha Serv. Corp., 439 U.S. 299, 308 (1978)). The National Bank Act was "enacted to protect national banks against intrusive regulation by the States." Id. The 1863 Act provided for federal jurisdiction in any suit by or against national banks. Schmidt, 546 U.S. at 309 (citing Act of Feb. 25, 1863, § 59, 12 Stat. 681). At the time, state banks could only gain access to federal court on the basis of federal question or diversity jurisdiction. Id.

In 1882, Congress revoked national banks' automatic access to federal court, creating jurisdictional parity between national and state banks:

> [T]he jurisdiction for suits hereafter brought by or against any association established under any law providing for national-banking associations . . . shall be the same as, and not other than, the jurisdiction for suits by or against banks not organized under any law of the United States which do or might do banking business where such national-banking associations may be doing business

5

when such suits may be begun[.]

Id. at 310 (quoting Act of July 12, 1882, § 4, 22 Stat. 163).

In 1887, Congress again revised the jurisdictional test for national banks and introduced the term "located" for the first time:

> [A]ll national banking associations established under the laws of the United States shall, for the purposes of all actions by or against them, real, personal or mixed, and all suits in equity, *be deemed citizens of the States in which they are respectively located;* and in such cases the circuit and district courts shall not have jurisdiction other than such as they would have in cases between individual citizens of the same State.

Id. (quoting Act of Mar. 3, 1887, § 4, 24 Stat. 554–555) (emphasis in Schmidt).

The 1882 and 1887 Acts were "designed to overcome the effect" of earlier statutes that provided for federal jurisdiction to national banks "solely because they were national banks." Mercantile Nat. Bank at Dallas v. Langdeau, 371 U.S. 555, 565 (1963). The revisions, including the 1887 revision that survives today in "modified form," "apparently sought to limit, with exceptions, the access of national banks to, and their suitability in, the federal courts to the same extent to which non-national banks are so limited." Id. That concept emanates from the National Bank Act's overriding "policy of competitive equality" between national and state banks. See First Nat. Bank in Plant City, Fla. v. Dickinson, 396 U.S. 122, 132 (1969) ("The policy of competitive quality is therefore firmly embedded in the statutes governing the national banking system.").

In 1911, Congress combined an unrelated provision, which also survives today in modified form at 28 U.S.C. § 1348, with the jurisdictional provision. Schmidt, 546 U.S. at 312. In 1948, Congress enacted section 1348 in its current form. Act of June 25, 1948, 62 Stat. 933.

The Supreme Court in Schmidt observed that the term "'located' is not a word of 'enduring rigidity,' but one that gains its precise meaning from context . . . .". Schmidt, 546 U.S. at 307. Some uses of the word in statutory provisions refer only to the state in which the bank's main office is located. Others refer to any state in which the bank has branch offices. Id. at 313–314. Compare 12 U.S.C. § 55 (requiring notice of sale of capital stock "in a newspaper of the city or

town in which the bank is located") with 12 U.S.C. § 92 (permitting national bank to act as insurance agent in certain circumstances when bank is "located and doing business in any place the population of which does not exceed five thousand inhabitants"). Here, it is possible that the term "located" at the time the 1887, 1911, and 1948 Acts were passed referred only to the location of the bank's main office, because "[n]ot until 1994 did Congress provide broad authorization for national banks to establish branches across state lines." Schmidt, 546 U.S. at 314; see Riegle–Neal Interstate Banking and Branching Efficiency Act of 1994, § 101, 108 Stat. 2339. But the meaning of "located" at the time those statutes were passed is subsidiary to the more significant question of Congress' purpose in enacting them — which was to maintain parity between state and federal banks.

Wells Fargo argues that Congress did not intend to create "precise jurisdictional parity" between national and state banks, but instead would have "tolerated imperfect parity." Wells Fargo never defines this distinction, and provides no policy or legislative rationale to explain why the Supreme Court would have "tolerated" something less than fidelity to Congress' expressed wish to treat national banks the same as state banks, which was the basis for its holding in Schmidt.

Wells Fargo contends that "imperfect parity" is appropriate because, by definition, state banks can only be citizens of one state. Similarly, it contends that the 1882 Act sought only to establish parity between national and state banks, not national banks and corporations — and, again, that state banks by definition can only be citizens of one state.[2] But these arguments elide a

---

[2] Wells Fargo responds that California banks and Texas banks must have their "head office" or "home office" in the state of incorporation. See Cal. Fin. Code § 1072 ("Every bank shall establish and maintain a head office which shall be located in this state"); Tex. Fin. Code § 32.202(a) ("Each state bank must have and continuously maintain in this state a home office. The home office must be a location at which the bank does business with the public and keeps its corporate books and records. At least one officer of the bank must maintain an office at the home office."). Per Wells Fargo, since state banks like those in California and Texas are citizens of only a single state, national banks should be, too.

Wells Fargo's argument presupposes that Congress silently intended to provide for single-state citizenship for state banks in 1958 based on Congress' then-present understanding of how state banks were organized. Nothing suggests that is the case. Rather, a state bank's single-state

1    critical step in the analysis — the diversity statute that applies to state banks is the statute for *all*
2    state-incorporated entities, including corporations, and corporations can be citizens of their
3    principal place of business as well as their state of incorporation. Thus, to "achieve complete
4    parity with state banks *and other state-incorporated entities*," as the Court stated in Schmidt,
5    national banks must be deemed to be citizens of both locations. To do otherwise is not to "tolerate
6    imperfect parity," but rather to contravene the holding in Schmidt.

### B. Federal Savings Regulatory Relief Act of 2006

In October 2006, nine months after the Supreme Court's decision in Schmidt, President Bush signed into law the Financial Services Regulatory Relief Act Of 2006, Pub. L. 105-351, 120 Stat. 1966. Section 403 of the Act, titled "Clarifying citizenship of Federal savings associations for Federal court jurisdiction," amended the Home Owners' Loan Act, codified at 12 U.S.C. 1464, by adding a new subdivision titled "Home State Citizenship":

> In determining whether a Federal court has diversity jurisdiction over a case in which a Federal savings association is a party, the Federal savings association shall be considered to be a citizen only of the State in which such savings association has its home office.

12 U.S.C. § 1464(x). Wells Fargo argues that this provision evidences congressional understanding that national banks, too, are citizens only of the state in which they have their main office, based on certain legislative history materials suggesting that Congress intended to create jurisdictional parity between federal savings associations and national banks.

As an initial matter, the Court notes that "the acts of a subsequent legislature tell us nothing definitive about the meaning of laws adopted by an earlier legislature." Fair Housing Council of San Fernando Valley v. Roommate.com, LLC, 666 F.3d 1216, 1223 (9th Cir. 2012).

---

citizenship, like that of any corporation that operates only within the territory of a single state, is purely a consequence of circumstance and the vagaries of state law. Should a state one day choose to permit state banks to keep their principal place of business in another state, the diversity statute provides that the state bank would have dual citizenship. And, though many national banks, like the one at issue in Schmidt, keep their principal places of business in the same state as their main office, Wells Fargo does not. A state bank in the same position as Wells Fargo would have dual citizenship. The jurisdictional parity Congress intended to apply to national banks dictates that Wells Fargo does, too.

8

1    Indeed, the Supreme Court has cautioned that subsequent legislative history is a "'hazardous basis

2    for inferring the intent of an earlier' Congress." Pension Benefit Guar. Corp. v. LTV Corp., 496

3    U.S. 633, 650 (1990) (quoting United States v. Price, 361 U.S. 304, 313 (1960)).

4          Moreover, if the Court were to read significance into Congress' subsequent conduct, the

5    Court must note that, on its face, section 1464(x) is materially different from the national bank

6    citizenship statute, which provides for citizenship of national banks in the "states" in which

7    national banks are "located." Congress' choosing not to amend section 1348 when it amended

8    section 1464(x) cuts against Wells Fargo's argument. Cf. Bates v. United States, 522 U.S. 23, 29–

9    30 (1997) ("[W]here Congress includes particular language in one section of a statute but omits it

10   in another section of the same Act, it is generally presumed that Congress acts intentionally and

11   purposely in the disparate inclusion or exclusion.") (citation and internal quotation marks

12   omitted)).

13         As for the legislative history Wells Fargo relies upon, the record is far less helpful to Wells

14   Fargo than it asserts.

15         Introduced July 28, 2005, section 213 of the original House resolution provided that

16   federal savings associations are citizens, for purposes of diversity jurisdiction: "only of the States

17   in which such savings association has its home office and its principal place of business (if the

18   principal place of business is in a different State than the home office)." H.R. 3505, 109th Cong.

19   (2005). That provision remained intact at the time the House resolution was passed. 152 Cong.

20   Rec. H706, H722, H738 (daily ed. March 8, 2006).

21         The report of the House Committee on the Judiciary upon which Wells Fargo relies

22   predates the resolution's passage, and states, in relevant part, "a Federal savings association shall

23   be considered – for purposes of establishing diversity jurisdiction – a citizen only of the State

24   where the savings association locates its main office . . . . This section also ensures greater parity

25   between federally-chartered savings associations and national banking associations by providing

26   that each is considered to be a citizen of the State where it is located for purposes of diversity

27   jurisdiction." H.R. Rep. No. 109-359, pt. 2, pp. 11–12 (Feb. 16, 2006). That statement is, of

28   course, inconsistent with the text of the resolution itself, which was passed a month later. It is also

United States District Court
Northern District of California

1   inconsistent with the text of an earlier report of the House Committee on Financial Services,
2   which subsequently referred the resolution to the Judiciary Committee, accurately describing the
3   provision as it was ultimately passed and referred to the Senate: "This section treats Federal
4   savings associations for purposes of Federal court diversity jurisdiction as being a citizen of two
5   states: the state in which the thrift has its home office and the state in which it has its principal
6   place of business." H.R. Rep. No. 109-356, pt. 1, p. 62 (Dec. 17, 2005).

The House resolution was received by the Senate and referred to the Senate Committee on Banking, Housing, and Urban Affairs on March 9, 2006. 152 Cong. Rec. S1969 (daily ed. March 9, 2006). However, H.R. 3505 was the subject of a hearing in that committee eight days earlier, before it passed the House, on March 1, 2006. During that hearing, some witnesses urged the committee to limit the citizenship of federal savings associations to a single state.

For example, the Director of the Office of Thrift Supervision, John M. Reich, testified: "While OTS supports section 213, our preference would be to modify the provision consistent with the Supreme Court's recent decision holding that a national bank is a citizen of only its home state." Consideration of Regulatory Relief Proposals, S. Comm. on Banking, Housing, and Urban Affairs, S. Hrg. 109-993, p. 83 109th Cong. (March 1, 2006). Reich clarified that the problem section 213 sought to correct was the anomalous result where "[s]ome courts have determined that if a savings association that is organized as a stock corporation conducts a substantial amount of business in more than one state, it is not a citizen of any state and, therefore, it may not sue or be sued in federal court under diversity jurisdiction. A provision similar to section 213 of HR 3505 would avoid this result[.]" Id.

The Chairman of Acacia Federal Savings Bank, F. Weller Meyer, similarly testified through a prepared statement: "Now that the Supreme Court has settled the question of diversity jurisdiction for national banks, Federal savings associations are the only financial institutions that can be denied access to Federal courts based on diversity jurisdiction. The change benefits consumers as well as Federal savings associations by providing both sides clear authority to access Federal courts." Id. at 198.

Of course, as already discussed, both witnesses misread Schmidt, which did not preclude

10

dual citizenship for national banks, but rather explicitly left the question open.

The bill reported out of the Senate committee was a redrafted and amended version of H.R. 3505. Section 213 became section 403 of S. 2856, which section was enacted into law in identical form. S. 2856, 109th Cong. (2006) (federal savings associations are citizens "only of the State in which such savings association has its home office.").

In short, the circuitous legislative history of 12 U.S.C. § 1464(x) does not support Wells Fargo's position regarding section 1348. The only source of support in the legislative history Wells Fargo was able to find was a House report that inaccurately described the bill ultimately passed by the House, and parroted the "located" terminology of section 1348 even though the bill at issue did not contain that language. Subsequent history of section 1464(x) evidences confusion about the reach of the Supreme Court's decision in Schmidt. And, regardless, nothing in the Financial Services Regulatory Relief Act of 2006 affects the national bank citizenship statute, which is worded differently.

Further, regardless of the parity Congress sought to achieve between federal savings associations and national banks, Congress has discussed national bank parity only as compared to state-chartered banks, not savings associations. That is the relevant comparison for the Court to make.

### C. American Surety

In American Surety Co. v. Bank of California, 133 F.2d 160 (9th Cir. 1943), the Ninth Circuit interpreted the predecessor statute to 28 U.S.C. § 1348, which was identically worded, and held that a national banking association is a citizen "only of the state in which its principal place of business is located." Id. at 162. That observation has led some courts to conclude that the American Surety test is still good law, supplementing the test set forth in Schmidt focusing on the bank's main office. See, e.g., Martinez, 2013 WL 2237879, at *4.

Wells Fargo argues that the American Surety court used the term "principal place of business" as a substitute for "state of incorporation," since dual citizenship did not exist until 1958. See Hertz, 559 U.S. at 86 (tracing history of principal place of business test). Ninth Circuit courts prior to 1958 do in fact appear to have used the term "principal place of business" as a

11

1   measure of fixing where a corporation resided.  See, e.g., Lorang v. Alaska S.S. Co., 298 F. 547,
2   549 (W.D. Wash. 1924) ("[T]he provision fixing jurisdiction in such actions in the court of the
3   district in which the defendant employer resides, or in which his principal place of business or
4   office is located."); Barrington v. Pac. S. S. Co., 282 F. 900, 901 (D. Or. 1922) ("It is clear that
5   this court is without jurisdiction of the parties, neither of the defendants residing or having its
6   principal place of business in Oregon.").

But American Surety did not decide the question of whether a national bank could have dual citizenship.  It decided only that the bank in that case was a citizen of California, where its principal place of business was located, and not a citizen of Oregon, since its only presence in the latter state was a "branch bank in Portland."  133 F.2d at 161.  Wells Fargo now speculates that if the Ninth Circuit had known how the law would change, it would have announced a different rule, or at least would decide the same question differently today.  But the Ninth Circuit has never abrogated or overruled the core holding in American Surety, which is that a national bank is a citizen of the state in which its principal place of business is located.  And as for changes in the law, the only significant change since the American Surety decision is that Congress addressed the citizenship of corporations in 1958, adopting dual citizenship based on the state of incorporation and the state of the corporation's principal place of business,[3] see Hertz, 559 U.S. at 87, which militates in favor of applying American Surety by its terms.

## IV.  CONCLUSION

For the foregoing reasons, the Court holds that Wells Fargo is a citizen of both South Dakota and California.  Consequently, the Court finds that it lacks subject matter jurisdiction over this action because Plaintiffs, Defendant Wells Fargo, and Defendant Cal-Western Reconveyance

/ / /

/ / /

/ / /

---

[3] Up until 1958, corporate citizenship was determined by reference to caselaw, not statute.  See, e.g., Black & White Taxicab & Transfer Co. v. Brown & Yellow Taxicab & Transfer Co., 276 U.S. 518, 524 (1928).

12

Corporation are all citizens of California, defeating diversity jurisdiction. This action is hereby REMANDED to the Superior Court of San Mateo County, California.

**IT IS SO ORDERED.**

Dated: November 30, 2013

_____
JON S. TIGAR
United States District Judge